## CITY OF GUTHRIE v. LUCY E. SHAFFER.

(Filed July 30, 1898.)

1. PLEADING—*Petition—Motion.* When a petition alleges facts sufficient to constitute a cause of action, but is not sufficiently definite and certain, the defect must be attacked by motion. A demurrer will not suffice.

2. JURORS—*Qualification—Error.* It is not error for the court to excuse one from a jury, in an action for damages for personal injury against a city, when such person shows on his *voir dire* that he is a resident citizen and taxpayer in said city, such person having an interest in the cause on trial; and, even if such person were not a resident citizen and taxpayer of said city, it was not prejudicial error for the court, on a challenge for cause, made by the plaintiff, to excuse him, when the record shows that other competent jurors were selected, examined, and impaneled, as provided by law. A party to a suit has no vested interest in a particular juror. All that he is entitled to is that the jurors be competent, selected as provided by law, and that they be not prejudiced.

3. WITNESSES—*Persons non Compos.* The statutes, by "persons of unsound mind," as used in section 335, Code Civ. Proc. St. Okl. 1893, relating to the competency of witnesses, mean persons whose minds are so defective that they cannot correctly relate facts, and do not understand or realize what they are saying or doing. If one is sufficiently intelligent to understand the nature of an oath, and can correctly relate facts and circumstances, he should be per-

mitted to testify. The trial court must determine, on examination of the witness, and from other evidence, if necessary, as to whether or not he can do that, and the jury alone must determine the weight to which said testimony is entitled.

4. EVIDENCE—*Weight of—Rule Applied.* The defendant objected to the plaintiff's testifying in her own behalf, on the ground that she was of unsound mind. Evidence was introduced tending to show her mental condition. The objection was made by the defendant, and a part of such testimony taken in the presence and hearing of the jury. The court gave the following instruction, to the giving of which defendant excepted: "Testimony is before you tending to show that since the time of plaintiff's injury her mind is somewhat impaired, and you are instructed that, in determining the weight to be given to her testimony, you should take into consideration the testimony tending to show the mental condition of the plaintiff at this time, and from such testimony, together with her own statements and evidence as to how the accident occurred, give to her testimony such weight as in your judgment the same is entitled to." *Held,* that such instruction correctly stated the law, and that the giving thereof was not error.

5. SPECIAL INTERROGATORIES. A special interrogatory requesting the jury to "state the condition of the street crossing, at the place of the alleged accident, on June 19, 1895," is not a proper interrogatory to submit to a jury. Where a special question of fact is submitted to a jury, the wording of the interrogatory should be clear and concise, and of such a form that they can give a direct answer thereto.

6. JUDGMENT—*Not Disturbed on Appeal, When.* Where the evidence reasonably supports the findings of fact of the trial court, such findings will not be disturbed on appeal. (*Gillette v. Murphy,* this volume, p. 91.)

(Syllabus by the Court.)

*Error from the District Court of Logan County; before Frank Dale, District Judge.*

*Bayard T. Hainer,* for plaintiff in error.

*Lawrence, Huston & Huston,* for defendant in error.

Action by Lucy E. Shaffer against the city of Guthrie. From a judgment for plaintiff, defendant appeals. Affirmed.

Opinion of the court by

BURWELL, J.: Lucy E. Shaffer, on November 30, 1896, commenced her action in the district court of Logan county against the city of Guthrie for damages in the sum of $10,000, for personal injuries received from being thrown from her cart while driving over a certain alleged defective and dangerous crossing. Issues were joined, and a trial had, which resulted in a judgment for plaintiff in the sum of $1,010. From this judgment the city appeals to this court.

I. The first assignment of error is that the court erred in overruling defendant's demurrer to plaintiff's petition. We think that there is no merit in this contention. The petition seems to contain all of the necessary allegations. It sets out the defective and dangerous condition of the crossing; the knowledge of the city of such condition, and its willful negligence in failing to repair the same; the manner in which the plaintiff was hurt, and her ignorance of the dangerous condition of the crossing, and the exercise of ordinary care at the time on her part; the fact that she had presented her claim to the city council, and its refusal to pay the same or any part thereof; the injuries received by her, and the items of damage, together with other necessary allegations. The petition was not as specific in some respects as it might have been, but, as no motion was filed to require plaintiff to make her petition more definite and certain, it is not necessary to consider that question.

II. It is insisted that the court erred in excusing one C. Y. Castenian from the jury, on the challenge of plaintiff. The examination of the juror is quite long, and cannot conveniently be given in detail; but the substance

of his answers was to the effect that he lived in Guthrie with his wife and children; that he had given all of his money to his children, who were of age, and that they had purchased property in the city, and had taken the title thereto in their own names; that his children were in business, which had been started with his money; that they all worked together, and held their possessions in common—paid all taxes and expenses out of the business—and that all got their living out of the profits.

Section 282 of the Code of Civil Procedure of the Statutes of Oklahoma of 1893 provides "that an interest in the cause" shall be ground for challenge. The party called as a juror, in answer to the direct question, "Do you own any property upon which you pay taxes?" answered, "Yes." The juror was being examined as to property in the city of Guthrie, and, while the question asked was not in express words confined to that city, we think no other construction could be placed upon it. The examination clearly shows that Castenian was a resident citizen and a taxpayer. That being true, was he disqualified?

The case of *Gibson v. City of Wyandotte*, 20 Kan. 156, is squarely in point. It was shown by the evidence of four of the jurors, while being examined in their *voir dire*, that they were each residents, citizens, and taxpayers of the city of Wyandotte. The plaintiff challenged each of them for cause, which challenges were by the court overruled. The supreme court said:

"We think the court below erred in overruling plaintiff's challenges. Said jurors were not competent to hear and determine this case. They were each personally interested in the result of the suit. We have no statute attempting to make such jurors competent, while

the statute excluding jurors who have 'an interest in the cause' (Gen. St. p. 680, sec. 270) would render them incompetent. The common law would undoubtedly exclude such jurors. At common law, jurors were required to be *omni exceptione majores*. And the great weight of authority, if not all authority, would exclude jurors interested in the cause as these jurors were." (Citing, *Diveny v. City of Elmira*, 51 N. Y. 506; *Wood v. Stoddard*, 2 Johns. 194; *Fine v. Public Schools*, 30 Mo. 166, 173; *Eberle v. Board*, 11 Mo. 247; *Mayor of Columbus v. Goetchins*, 7 Ga. 139; *Russell v. Hamilton*, 3 Ill. 56; *Watson v. Tripp*, [Sup. Ct. R. I.] 15 Am. Law. Reg. [N. S.] 282; *Bailey v. Town of Trumbell* 31 Conn. 581; *Com. v. Ryan*, 5 Mass. 90; *Cleaye v. Hyden*, 6 Heisk, 73.)

If Castenian was a resident, citizen, and taxpayer of the city of Guthrie, he was disqualified on account of interest in the cause being tried; but, even if he were not a resident, citizen, and taxpayer, but were in every way qualified, it was not error for the court to excuse him, unless by so doing the defendant was prevented from having a fair trial, and that is not claimed. The trial court is vested with a wide discretion in the trial of a cause, and, unless there is a clear abuse of such discretion, the judgment of the lower court will not be disturbed. The demeanor of a juror while being examined sometimes speaks louder than the words he uses in answering the questions. All such matters are before the trial court, and it can and it is its duty to consider them. Before the verdict will be disturbed, the defendant must show that it was prevented, by the action of the court, from having a fair and impartial jury. Nowhere in the record does it try to make such a showing. Errors that will secure a reversal of the judgment are substantial errors. They must be errors that prejudice

a party's right, and not little irregularities, that creep into almost every trial. In the case at bar the defendant must have been satisfied with the jury that tried the case, because it only exercised one of its peremptory challenges. If the defendant was given a legal jury—a jury that was fair and unbiased,— that is all it was entitled to under the law. One has not a right to have his cause tried by a particular juror. All that he can insist upon is that the jurors be competent—selected as prescribed by law—and that they be not prejudiced. It is said in Thomp. & M. Juries, sec. 271, that:

"It is sometimes supposed, especially upon criminal trials, that, even before swearing, a party may acquire a vested interest in a juror. But, as observed by Lord Campbell, C. J.: 'In truth and according to law, there is no necessity nor right that a prisoner shall be tried by particular jurymen, till the prisoner has been given in charge to the jury. * * When the prisoner has been given in charge to the jury, by that jury he must be tried; and, in felony or treason, the jury cannot separate until they have found their verdict. But, as often happens at the assizes, before a particular prisoner, who has had his challenges, is given in charge to the jury, the court rises and the jury separate. Next morning a new jury is called, when the prisoner again has his challenges, and possibly there may not be one individual upon the second jury that was sworn upon the first, yet all this is regular.' Where a cause has been tried by an impartial jury, although the judge, on the application of one of the parties, and against the consent of the other, may have rejected a juror for a cause of questionable sufficiency, such rejection does not afford a ground of complaint, if justice has been done in the premises. In other words, while the disallowance of a good cause of challenge will work a reversal of the judgment, an improper allowance of a cause of challenge will not ne-

cessarily have this effect. A qualified juror may be rejected, and still a jury of lawful men, against whom there is no objection, may be obtained. A party is entitled to a lawful jury; but he is not, under all circumstances, as a matter of right, entitled to have the first juror called who has all the statutory qualifications." * *

1 Thomp. Trials, p. 82, sec. 88: "So the court may, *ex mero motu*, examine veniremen for grounds of partiality, and direct them to stand aside, although not challenged by either party, and although not subject to challenge, though in some jurisdictions veniremen thus stood aside are not excused, but may be called and tried upon challenges, if the regular panel is exhausted without securing a jury; and the court has authority either to examine the veniremen or any other witnesses, to ascertain such matters of fact as will enable it to exercise this power discretely."—Citing many authorities. (See, also, *Bradford v. Territory*, 2 Okl. 228, 37 Pac. 1061; *City of Oklahoma City v. Meyers*, 4 Okl. 686, 46 Pac. 552.)

It is not necessary to cite further authorities, as this point is well established. There is, however, a wide difference in excusing a competent juror and retaining an incompetent one. The rule is just the reverse, unless the party objecting fails to exercise all of his peremptory challenges. Should he fail to exercise them, the error is waived. (*Morton v. State*, 1 Kan. 473; *Wiley v. Keokuk*, 6 Kan. 104; and *State v. Furbeck*, 29 Kan. 535.)

III. The plaintiff in error alleges that the trial court erred in permitting plaintiff (defendant in error) to testify on the trial, for the reason that it was proven that she was of unsound mind. Section 335 of the Code of Civil Procedure of the Statutes of Oklahoma of 1893

—30

provides: "The following persons shall be incompetent to testify: First, persons who are of unsound mind at the time of their production for examination." * * Was the defendant of unsound mind at the time of the trial? This we have to determine from the record. It must be remembered that the statute does not mean that every person whose mind is not perfectly sound shall be incompetent to testify in a cause, for, if that were true, perhaps few would be competent, as it has been stated by experts that a very small per cent. of people, if any, have minds that are perfectly sound; and to give the statute such a construction would be to exclude thousands of persons, in every state, from testifying, whose testimony is entitled to the utmost faith and credit. The statute, by "persons of unsound mind," means persons whose minds are so defective that they cannot correctly relate facts, and do not understand or fully realize what they are saying or doing. If one has sufficient intelligence to understand the nature of an oath, and can correctly relate facts and circumstances, he should be permitted to testify. The trial court must determine, by examining the witness and by other evidence if necessary, as to whether or not he can do that. A person might be entirely insane on one particular subject, and yet be competent as a witness regarding other matters. The court must use its best judgment and discretion in this class of cases, and, before the appellate court will say it made a mistake, the appellant would have to show clearly that the trial court was wrong.

Bouvier says: "The term 'unsound mind' seems to have been used in those statutes in the same sense as insane; but they have been said to import that the party

was in some such state as was contradistinguished from idiocy and from lunacy, and yet such as made him a proper subject of a commission to inquiry of idiocy and lunacy."

In the case of *Sarbach v. Jones*, 20 Kan. 497, it is said: "A man may have many delusions, and yet be capable of narrating facts truly; and the existence of such delusions on his part, at the time of the occurrences which he is called upon to relate, goes to his credit, and not to his competency, when he is of sound mind at the time he is called upon to testify. As there can be neither perfect sanity, nor perfect insanity, so no witness, not incompetent within the statute, is to be absolutely excluded because he has been insane, and he is called upon to narrate matters some of which occurred while he is alleged to have been unconscious. 'If a witness appears, on examination by the judge, or by evidence *aliunde*, to have been incapable, at the time of the occurrences which he is called to relate, of perceiving, or to be incapable at the time of the trial of relating, then he is to be ruled out.' "

Justice Field, speaking for the court in the case of *District of Columbia v. Armes*, 107 U. S. 519, 2 Sup. Ct 840, said: "The general rule, therefore, is that a lunatic or a person affected with insanity is admissible as a witness, if he have sufficient understanding to apprehend the obligation of an oath, and to be capable of giving correct accounts of the matters which he has seen or heard in reference to the question at issue; and whether he has that understanding is a question to be determined by the court, upon examination of the party himself and any competent witnesses who can speak to the nature

and extent of his sanity. Such was the decision of the court of criminal appeals in England, in the case of *Reg. v. Hill*, 5 Cox, Cr. Cas. 259." * *

As will be seen by the foregoing authorities, the competency of a witness is a question for the court, but the jury shall determine the weight that his evidence is entitled to.

IV. The contention of counsel for appellant that instruction numbered 10, given by the trial court, was error, cannot be sustained. The instruction is as follows: "Testimony is before you tending to show that since the time of plaintiff's injury her mind is somewhat impaired, and you are instructed that in determining the weight to be given her testimony tending to show the mental condition of the plaintiff at this time, and from such testimony, together with her own statements and evidence as to how the accident occurred, give to her testimony such weight as in your judgment the same is entitled to." The defendant below objected to the plaintiff's testifying on the ground that she was of unsound mind. This objection was in the presence of the jury. Some of the evidence relative to the condition of the plaintiff's mind was also introduced in the presence and hearing of the jury. We think, under these circumstances, that it was perfectly proper and right that the court should give the instruction quoted above. The city cannot complain of the instruction anyway, because it virtually told the jury that , if they believed plaintiff's mind to be injured, they should give her evidence only such weight as they believed it entitled to. We are thoroughly satisfied that the trial court was right in admitting the testimony of the plaintiff, and in giving the instruction.

V. It is also contended that the court erred in not giving special interrogatory numbered 4, which is as follows: "State the condition of the street crossing at the place of the alleged accident, on June 19, 1895." We fail to see any error in this refusal. The question asked to be submitted was too general, and called for a statement of the condition of the crossing. By this question, the jury probably would have thought that they were called upon to tell all about the crossing, as to length, width, height above street, whether old or new, whether safe or unsafe, whether defects in same, if any, could be seen at a distance, etc. The question was not in proper form. "Each special interrogatory submitted to the jury should be so framed as to present distinctly a single material fact involved in the issue of the case." (*Railroad Co. v. Aderhold* [Kan. Sup.] 49 Pac. 83.) Where a special question of fact is submitted to a jury, the wording of the interrogatory should be clear and concise, and in such a form that they can give a direct answer thereto.

VI. The only remaining question worthy of consideration is that the verdict and judgment was contrary to the evidence and not supported thereby. An examination of the record shows that the evidence reasonably supports the special findings and also the general verdict. Therefore the judgment of the lower court will not be disturbed. It is a well-settled rule in this court that it will not determine upon the weight of conflicting evidence. For the reasons herein stated, the judgment of the lower court is affirmed, at the cost of appellant. A mandate will issue from this court in corformity herewith.

Hainer, J., having been of counsel, and McAtee, J., not sitting; all of the other Justices concurring.