MELSON *vs.* DICKSON.

1. Jurors who would be incompetent if related to the parties, are
equally incompetent when related to counsel whose conditional fees
entitle them by contract to a part of the recovery.
2. A tort may be set off against a tort under our Code; therefore, to
an action of trespass *quare clausum fregit* a tort in the conversion of
personal property may be set off.
3. In an action for a tort, equity will set off claims *ex contractu*, where
the plaintiff in the action is insolvent and unable to respond, and
the defendant's claim *ex contractu* will otherwise be hazarded ; and

Melson *vs.* Dickson.

under our Code such equity may be asserted and set off in a plea embodying substantially the allegations necessary in a bill in equity

4, If one claiming to be a landlord, enter upon his alleged tenant, by valid legal process regularly sued out, issued and executed, the defendant in the process cannot maintain trespass *quare clausum fregit.* His remedy is by an action on the case for suing out the process maliciously and without probable cause.

Jurors. Attorney and client. Set-off. Actions. Pleadings. Before Judge Buchanan. Coweta Superior Court. March Term, 1879.

Dickson brought an action of trespass *quare clausum fregit* against Melson. Defendant pleaded as follows:

(1) The general issue.

(2.) That he was ' the owner of the premises and had a right to enter. That the different counts of the declaration referred to the same transaction, which was this: Plaintiff was a tenant of defendant on the premises, and agreed to pay him $600.00 on November 1st, 1875, as rent from September 1st, 1874, to the close of the year 1875. This he failed to do, and defendant sued out a warrant to dispossess him. He failed to give any bond and stop the proceeding according to law. Defendant was accordingly put in possession, and of course received the crops, cultivated them to maturity, and used them when gathered.

(3.) Set-off of certain personalty in possession of plaintiff belonging to defendant, which the former had appropriated and refused to deliver up.

(4.) Set-off, because of the entry by plaintiff on the place, pending defendant's possession, and the carrying away by him of part of the crop and certain other personalty.

(5.) Set off of two notes held by defendant against plaintiff. This plea alleged that plaintiff was utterly insolvent and unable to respond to any separate judgment which might be obtained against him; it therefore prayed that these claims be allowed as a set-off.

On motion the court struck all the pleas which sought to set off matters arising *ex contractu,* and from damage to or conversion of personal property.

On the trial, the following facts appeared : On August 24th, 1870, Freeman, who then owned the land involved in this suit, made a bond for titles to plaintiff (Dickson) ; part of the purchase money was paid and the balance was not. Defendant (Melson) was a creditor of plaintiff, and was pressing him for payment. A settlement was arrived at by which plaintiff assigned to defendant the bond for titles from Freeman, on September 1st, 1874. On the same day defendant received from plaintiff a rent note for the place for $600.00, due November 1st, 1875, and certain purchase money notes, and gave him a bond to make a title to him upon payment of such purchase money notes. It is two of these three notes which defendant pleaded as a set-off. Defendant paid the balance due Freeman and took a deed from him on January 8th, 1875. In 1876 defendant sued out a warrant to dispossess plaintiff, and upon his failing to give bond as provided by law, he was dispossessed, and defendant received possession. He took entire charge of the place, gathered the crops and used them.

Plaintiff insisted that he was not a tenant of defendant, but a purchaser of the place ; that he was unable to give bond, and that his eviction was a trespass. The rent note for $600.00 he explained by saying that it was merely a ruse adopted by him and defendant for the purpose of keeping off other creditors who would otherwise interfere with his crop, in order that he might, under cover of this claim, gather his crop and pay defendant ; he denied that any rent was due, or that the note was *bona fide.* On these points the evidence was in direct conflict.

There was much other conflicting evidence as to values, etc., not material here.

The jury found for plaintiff $512.50. Defendant moved for a new trial, on the following, among other grounds :

(1.) Because the court refused to strike the names of four persons from the traverse jury from which the jury that tried said case was taken, for cause, it being shown that two of said jurymen were brothers to two of plaintiff's attor-

neys, one a first cousin, and one an uncle of the wife of one of said attorneys. Defendant averred, and offered to show, that said attorneys were interested in the event of the suit, and were to have a part of the money recovered as a fee, and nothing if they failed to recover. The court refused to allow said showing to be made, and defendant exhausted four of his strikes on said jurymen.

(2.) Because the court struck the pleas of set-off.

(3.) Because the court refused to non-suit the plaintiff on motion of defendant's counsel.

(4.) Because the verdict was contrary to law and the evidence.

The motion was overruled, and defendant excepted.

L. R. RAY; SAMUEL FREEMAN; J. K. BOON, for plaintiff in error.

DAVIS & BREWSTER; JNO. S. BIGBY, for defendant.

JACKSON, Justice.

This was an action of trespass *quare clausum fregit*, where the jury found for the plaintiff, and the defendant moved for a new trial, which was refused, and he excepted.

1. The brothers and cousins of the counsel, whose contract entitled them to part of the recovery, and who, under our Code, have a lien for their fees on the suit and the judgment, should have been stricken for cause. Under the English law no such fees are allowed to counsel, and therefore kinsmen of the counsel are not incompetent jurors. Hence the *dictum* in Bacon's Abridgment. 5 Bacon's Abridg. title, Juries, p. 354. But in our state the law is totally changed, and the reason and spirit of the *dictum* ceasing, it has no authority here. They were as much interested and as partial as if of kin to the plaintiff himself, if the fee were half the recovery, and probably it was; at all events, they were not *omni exceptione majores* if the fee were any part of the recovery; and this it was proposed to prove.

Melson vs. Dickson.

The defendant had the right to a panel of twenty-four from which to strike—all twenty-four impartial men. 7 *Ga.*, 139 ; 15 *Ga.*, 39 ; 59 *Ga.*, 145. He was denied this right and was forced to exhaust four strikes upon two brothers and two cousins of the opposing parties who had an interest, a pecuniary interest, in the verdict and judgment they were pressing to obtain. The denial was erroneous and hurtful. A big part of the battle is the selection of the jury, and an impartial jury is the corner-stone of the fairness of trial by jury.

2. The Code provides that a tort may be set off against a tort, and we have so held. Code, §3261 ; *Ingram vs. Jordan,* 55 *Ga.,* 356 ; 59 *Ga.,* 610. This suit is for a tort; the plea which was stricken is for the conversion of personal property, equivalent to trover in the old form, or the statutory remedy in our Code. It should not have been stricken, because trover is a tort as well as trespass. See also 56 *Ga.,* 353 ; 49 *Ga.,* 491; 30 *Ga.,* 121.

3. Equity will always interpose to set off a claim *ex contractu* where a creditor is about to be mulct in damages by an insolvent debtor, and *vice versa.* 55 *Ga.,* 356 ; Waterman on Set-off and Recoupment, §§395–6, 408. So in this case, on a bill properly filed, the notes held by defendant against plaintiff would have been set off by a court of equity. But under our Code the party need not go into equity's peculiar forum, but may assert all equitable rights at law on an equitable declaration or plea substantially setting out the facts necessary to be alleged in a bill. Code, §3082; 45 *Ga.,* 13–17–331, etc., etc.

This plea does that substantially. It alleges insolvency and consequent inability of plaintiff to pay these notes. It would be wrong, therefore, to let him annoy plaintiff with any judgment, unless he recovered more than he owed, and for any amount except the surplus after paying what he owed defendant. This plea therefore should not have been stricken.

In my own view of the law the bond for title and the

rent note, though on two pieces of paper and separate in-
struments, were cotemporaneous and made but one contract.
They should be construed together. So construing them
the meaning is plain. The land was sold on the bond for
titles but unless the terms were complied with, the title
was to remain in the vendor and the vendee was to be his
tenant. The rule of construction is to give both papers
such a meaning that both may stand and neither fall—*ut
res magis valeat quam pereat.* So construing them, the
meaning is clear, and when the terms of the sale were not
complied with the relation of landlord and tenant was es-
tablished by the note as part of the contract; and the ten-
ant will not be heard to dispute the landlord's title. The con-
tract was executed, the papers signed and delivered, and the
tenant put in possession under them. He cannot dispute
the title which put him in or any part of that title. He seeks
to do so here by proof of his own fraud—that he made the
rent note to cheat his creditors. It is he that sets up
this fraud to overthrow the contract which he made and
executed. This he cannot do.

The truth is that this case seems to us to be covered
all over by the case of *Tufts vs. Dubignon,* 61 *Ga.,* 322;
and that if that case be law, and we so held then and so
think now, then this verdict cannot stand.

4. But the plaintiff has clearly mistaken his remedy.
This was no trespass *quare clausum fregit.* The defend-
ant entered under legal process. The papers in the distress
warrant case were all apparently right, and authorized him
to enter. He broke no close of the plaintiff when he en-
tered, and used no violence. If the plaintiff says that he
sued out the proceeding under the distress warrant without
foundation, but oppressively and maliciously, he has his
remedy; but that remedy is not an action of trespass *quare
clausum fregit,* but a special action on the case for the un-
founded and malicious proceeding under form of law.
And so this court has held. *Riley vs. Johnson,* 13 *Ga.,*
260; *Sewell vs. The State,* 61 *Ga.,* 496.

Independently, therefore, of all other objections to the verdict and judgment, this must conclude the plaintiff's right to recover under this remedy; and we cannot see how he would be much helped, if he tried the other and only remedy given him. The facts would seem to show probable cause, and set-offs, legal and equitable, would render recovery, it would seem, hopeless.

Judgment reversed.